Thank you, Mr. Chief Justice, and may it please the Court. If anyone is a party in interest entitled to be heard in this Chapter 11 case, it's the insurer, truck, who will pay virtually every dollar the debtors owe the asbestos claimant. Yet the Fourth Circuit's rule denies that insurer a voice. That rule is not a voice. That rule, which my friends barely defend, violates the text, context, and history of 1109B. It also defies the practical reality that Chapter 11 cases are, as this Court has recognized, collaborative, working best when all stakeholders come together at the outset to hash things out. Congress recognized that reality and spoke expansively in 1109B to extend the right to be heard to any issue. Congress also gave courts a duty to ensure compliance with the Code and invited broad participation to help discharge that duty. 1109B's breadth is a feature, not a bug. It's now common ground that a party in interest is one who could be directly and adversely affected by the case. That's truck in at least two ways. First, it's the insurer, paying the vast bulk of claims against the debtors. In the government's terms, it's a contracting party. From the start, then, truck's rights could have been directly and adversely affected by this case. The proof of that pudding is in the plan's finding, which resolved a key coverage dispute against truck. Second, truck's a creditor for millions in insurance deductibles. For both reasons, 1109B's plain terms entitled truck to be heard on any issue. In silencing truck, the Fourth Circuit violated those terms by limiting who a party in interest is and what issues they can raise. I welcome the Court's questions. Ms. Ho, at what point do you determine the status of party in interest? Thank you, Justice Thomas. At the outset, Section 1109B's text refers to be heard under any issue in this case. We think that has to be an ex ante inquiry, in part because there are other provisions of the Code apart from 1109B that affect parties in interest that don't depend on a specific plan or any plan. Well, in this case, the determination at the end was that truck was not negatively affected. How could you determine that at the beginning of the proceedings? Yes, Your Honor, because I think the question should be could. Could the entity be affected by the Chapter 11 case? And as the insurer, there are any number of ways that truck could have been affected. It could have been affected by a plan that resulted in one as we were seeking with fraud prevention measures, or it could have resulted, as had happened, in a plan that didn't include those. We came into this Chapter 11 proceeding as a creditor. The proceeding could have resulted in our claims being impaired or unimpaired. And you don't know that until the end, but the language of 1109B speaks to a creditor. So if you're a party in interest in the beginning with a right to be heard under 1109B, then you're a party in interest all the way through. What if, I know there's some back and forth about the facts, but in a hypothetical, let's assume that your client, whichever plan, there's three different plans on the table. And under every one, your client gets, you know, his exposure is exactly the same. It makes no difference to him which particular creditors are going to get what. He's just, given the factual situation, he's going to walk away with exactly what he has or what he doesn't have when it's all done. In what sense does he have an interest in how his assets are distributed or what the liabilities are? In other words, although he is, you could identify where he is going to, you know, be on the hook or not on the hook, but at the end of the day, everybody agrees it's not going to make any difference. Now, does he still get to participate because his assets are going to be used in some form or another? Yes, Your Honor, and this goes, Mr. Chief Justice, this goes to, I think, the colloquy I was having with Justice Thomas about the importance of the anti-determination of who a party in interest is, right? It's somebody who could be directly and adversely affected. Well, under my hypothetical, he's going to be adversely affected to exactly the same extent or not affected at all. I think as long as, in the course of the case, that entity is directly and adversely affected, and I think one way that we know that, Mr. Chief Justice, is because if you look at 1109B, one of the entities that's expressly listed is a creditor. And we also know that different provisions of the code, it matters whether you are impaired or unimpaired, right? So, in other words, you don't get a vote on a plan if your interests are not impaired, so that is different than being hurt. We also know that in these proceedings there are some creditors that are just not going to get anything because of their particular status and all that. Now, I suppose you want to say technically under the rule he can go in, and maybe that's a difference in this case, but is a party in interest, is that the same test for that Article III? That's our position. Our position, which is the position adopted by the Third Circuit, is that the test for that is Article III. Well, under Article III, if you're not going to be injured at all because the proceedings, you know you're not going to get any money or you know you're not going to have any left or whatever it is, I don't know that that would satisfy Article III. Just because people are going to be fighting about who gets your money, but the one thing that's clear, it's not going to be you. Well, I think so. You don't know that. You don't know that at the outset of the proceeding, right? So a creditor does not know. A party in interest or an equity holder does not know, and even the debtor doesn't know. Well, that I think is fighting my hypothetical, and maybe it's not a good hypothetical, but assume that that is the fact, that they're not going to be affected one way or another. They're just so far down the line of people who can recover or so far down the line of people who are responsible that they're really not going to get anything else. I do hate to fight your hypothetical, Mr. Chief Justice, but I do think such a person, I guess maybe I'm fighting it because it's hard to know, maybe impossible to know at the outset of any proceeding, whose ox is going to be gored and how much. That is very much an open question. That is why Congress in 1109B set a big table so that all parties in interest can come and participate and be heard and work out the negotiation among the parties who have a stake, who could be directly... I'm not sure, Ms. Ho, how your at the outset rule fits with your Article III rule, because as you just suggested, at the outset, there's going to be a lot of things you don't know. You don't know what the plan is going to be. You don't know whether the plan is going to affect you, injure you or not. All the things that we think of in the standing context, is there imminent injury? Is there some traceability? At the outset, many people won't have the answers to those questions. I guess I can understand at the outset rule and I can understand an Article III rule, but I'm not sure I can understand both of them together. Sure. Two points to that, Justice Kagan. To start, we do think that party and interest is co-extensive with Article III, but you wouldn't have to agree with me on that, to agree in terms of who a party and interest is under the statute. But secondly, I do think there is... So your first answer is you're willing to give up the Article III? Well, I don't think my... I just wanted to make clear, Your Honor, I don't think you don't have to agree with me on Article III. We do think it is co-extensive, as the Third Circuit has held for a dozen years, and I don't think there's any tension between that and ex-ante. I think the way to think about it is, it's basically do you have standing and just disaggregating that from the merits, right? How the proceeding will actually unfold. In the same way that this Court, you know, doesn't let the standing inquiry determine the merits, I think it operates the same way in 1109B and the party and interest discussion and analysis, is that you're looking to see, could these proceedings directly and adversely affect it? I think as to traceability and redressability, those requirements of Article III will virtually always be satisfied in every case where there's a party and interest, right? Can I break this down? There are various points at which you decide standing. One is at the beginning of the suit. And I think this is not an Article III court, this is an Article II court. And it's not even a full court, because you can't do everything an Article III court can do. It's closer, not quite, to an administrative proceeding. But it's an Article II court. And generally, a party and interest is anyone that could be affected by a plan. The plan hasn't come into effect, but you could posit a thousand different ways that a plan could directly financially injure someone. The chief is positing a case where there's just not enough money, they're never going to reach down here. But you don't know that, because you don't know what claims are going to be disallowed, whether some priority claims are not going to be accepted. That's what you're saying about the unknown. Yes. Now the question becomes, when you get to the point that a plan, and this is the point we're at, when we get to the point that a plan is in place, now the question is, who can object to that plan? Correct? And now the question becomes, what are the reasons you can object, and you're saying, because this plan as structured not only violates the terms of our contract, it also violates the terms of the bankruptcy court. You're saying that there's a separate good faith and fair dealing, an equal treatment requirement under the bankruptcy code, and that this plan violated that. Correct? Correct, Your Honor. Now, the net neutrality test doesn't answer that second question. Correct? Correct. Because whether or not, if this plan in some way has treated you differently from the debtor's other debts, with no reasonable basis to do so, that could breach the bankruptcy code, good faith and fair dealing. Correct? Correct. All right. So now, it's possible after we go through all of this that the court below will say, nope, it doesn't breach it, but you have a right to be heard on that. That's what you're saying. That's the standing. Correct? Yes. So that's the difference between you can't flip things and get to the merits in that way. You have to look at that standing issue on the basis of the moment the plan is there, I'm being affected by the plan. It's possible that that effect won't rise to the level of something that I will be given something to, but I have a right for them to hear me out on this, correct? Correct. Can I ask you about the difference between your view and the government's view? I understood the government's view to be narrower, but that you would also be covered by it. So do you reject their sort of contract-based determination here? No, not at all, Justice Jackson. I don't see the government's position as a different test. Do you agree it's narrower than yours? I think I would agree that it's narrower. So why is yours better? I actually don't know that one is better or the other. I think what the government is saying is we both agree that 1190, that the text is broad and expansive. Right. We both agree that we are a creditor and that we were entitled to be heard that way. I think the government's position is they're focusing on anyone who holds an executory contract, and we do. So that brings us in. I guess what I'm worried about a little bit is that if we go beyond people who hold a contract and just to anyone who's adversely affected, I guess you could imagine that a competitor in this environment would say I'm adversely affected by what is happening with the bankruptcy of this other business. Would we be opening the door to allowing in the kinds of entities on the basis of your broad test that you would otherwise think Congress would not have wanted to be a party of interest? No, Your Honor, and to be clear, we are more than happy to embrace a holding of this court, that we are a party of interest who can be heard on any issue because of the insurance contract that we hold. So I want to be clear on that. But I think to your point about the floodgates argument that my friends raised, I don't think so because I think the direct and adverse test, which we believe is coextensive with Article III, it has teeth. Again, it has been the rule in the Twelfth Circuit for over a dozen years. My friends on the other side really can't point to any sort of chaos that has resulted from it. So I think our test has teeth, and I also think that Congress, again, as I started by saying, I think the barrette is a feature and not a bug here, that Congress wanted to bring stakeholders to the table, parties of interest who had a stake, and if anyone has a stake in this Chapter 11 proceeding, it is the insurer who will be paying the vast bulk of claims against the debtors. This doesn't hurt your argument, but isn't it true that the insurer who is responsible for the claims will always or almost always be a party of interest then in bankruptcies, mass tort bankruptcies? I think that's right. And when I sort of think to myself who else could be brought in under our test, I do think the single largest group are insurers, and who will also often come in as predators as well, as we do too. Counsel, just on the Article III point, I wonder whether we need to tangle or should tangle with it, because I think of Article III as the plaintiff coming to court has to establish an injury, and who the plaintiff is in a bankruptcy case, I don't know, maybe the petitioner, right? But normally we say someone objecting to relief under bond, under clapper, doesn't have to establish Article III standing, and that would seem to be a closer fit to a party or a group like yours seeking to object to a plan. I certainly don't disagree that in the context where what you have is someone who is only objecting, right, to the relief being sought, and that is us to a T, right? We are objecting to the plan. I think there may be a different issue raised when you get to, say, appellate standing, but in terms of 1109B, party of interest, we do agree that we are opposing the relief. Yes, thank you. Thank you, Counsel. Justice Thomas? Justice Sotomayor? Assuming if we reach it on the government's theory or your theory, that directly and adversely means an insured because they have a contract as a party in interest, that should be heard, that we don't have to reach the creditor issue or the Article III issue? That's correct, Your Honor. Justice McKagan? Yes. Justice Kavanaugh? Justice Barrett? Well, let's see. It seems to me that maybe we would have to at least say Article III doesn't apply because someone like the insurer is not the one invoking it. I guess I would be a little bit worried, as you say, if Congress is setting the table broadly and parties in interest cut broadly. It's speculative, right? I mean, it's pretty speculative. You might be able to articulate a way that the plan could adversely affect your interests, but it would be speculative. And so maybe we don't have to say whether Article III applies in Article I courts, but if I think you might have a problem satisfying Article III, I think I would still have to say you have statutory standing, right? Yes. I don't believe there's any dispute that we have Article III standing here in a court below because we weren't heard, and so we're challenging that we're not heard. Yes. I do think in terms of the Article III issue, the Fourth Circuit did address our creditor issue in Article III terms, but I think what that court was really doing was it was reading any issue out of the statute. So I think from this court's perspective, I don't think there's any question about our Article III status. I think the question is are we a party in interest. We say that's directly and adversely affected. The government says it's because we have an executory contract. Either way, I think we satisfy the statutory standing, and we also satisfy Article III. Oh, I see what you're saying. I mean, I get what you're saying. I'm just saying if I don't want your test, if I don't want to say that the statutory standard is coextensive with Article III, that's the issue that I might have. And then just very briefly, could you describe for me for the uninsured claims what exactly, I mean, Kaiser and the claimants are fighting pretty hard to keep the insured claimants out. So what exactly are the fraud protection measures that would apply to the uninsured claims, the ones that you want to apply to the insured claims as well? Sure. There are essentially two, Justice Barrett. The first would require all claimants to disclose all known exposures to all defendants. And the second primary requirement or measure would be a release that would allow the trust to obtain information from the other trusts on that. Okay. Thank you. Justice Jackson? Thank you, Counsel. Thank you. Mr. Yang? Mr. Chief Justice, and may it please the Court, both counterparties to executory contracts and creditors are parties in interest, that may appear and be heard on any issue in a Chapter 11 bankruptcy case. If a party is a party in interest, they get a seat at the reorganization table. And once they're at the table, they can be heard on any issue in the case. And that status must be determined ex ante, that is, before the Court considers a question, because the right is to be heard in advance. That doesn't depend on the merits of the position, and it cannot be determined based on what a plan proposes, because a party in interest under 1121C can itself propose a plan. Moreover, the plan is never final until all appellate proceedings on the confirmation are ended, so they can participate all the way through. The Code contemplates that every executory contract must either be assumed or rejected. Either way, and I'd like to develop that in our conversation, but either way, a counterparty is a party in interest. I'd be happy to follow up on that. Mr. Yang, what's the difference between your view or your approach to 1109 and petitioners? Well, I think petitioners' view, well, it appears to me that they are interpreting party in interest based on some older Interstate Commerce Act cases that borrowed some Article III concepts when interpreting party in interest. We just don't think that's a term of art. It's not clear to me that they actually say that you have to have Article III standing to raise an objection. I think it's more based on the term and the Article III ideas were incorporated by reference to the cases. So I'm not sure we disagree about Article III. We just disagree about the interpretive method. Our interpretive method just goes to the text. The text is broad. It's not so broad as to get amici or people with very tangential views in the case. But in this case, it certainly applies expressly to creditors, and we think it applies to parties with executory contracts. Because remember, executory contracts under 365 are either going to be assumed affirmatively or rejected. And if assumed, sometimes they're assigned to somebody else. Now, if the debtor seeks to assume a contract, they have to satisfy Section 365 standards that protect the counterparty. If there's been some kind of breach, it has to be cured. Certain contracts cannot be assumed, and the counterparty can object. Among other things, the counterparty has an interest in the debtor's ability to fulfill that contract going forward, and the debtor has to move to assume a contract. It has to show that the business judgment standard has been met. The counterparty can reject. Now, if the debtor wants to reject the contract, Justice Kagan, your opinion in Mission Products Holdings addresses this, that results in a breach of contract. It results in a claim, and then the creditors claim it. And they're not in a real good position because it's usually a pre-petition claim, and you get pennies on the dollar in most contexts. Either way, assumed or rejected, they have an interest. Now, that's reflected not only in… Mr. Yang, in an old case of ours, we used the term adversely and directly affected. Do you accept that standard, or do you think we should not have a standard like that? You know, I'm not really sure where that standard comes from except unless you are drawing from Article III. We don't really object, I think, to the outcome of having some direct effect. Whether you're adversely affected, though, I think is the wrong question. You have to have the potential to be adversely affected in the bankruptcy because that's what the reorganization is. You bring everybody in who has a potential to be affected, and you work it out. So going back to the precode bankruptcy act… And, sorry, if I could just follow up. You two, and this is just like Ms. Ho said at the outset, this is… What if you don't really know whether you have any interest in this until the middle of the thing? I can imagine many, many events taking place, including there's now a plan on the table, and now you look at the plan on the table, and you think, oh my gosh, it could be affected. It just seems a strange thing in a bankruptcy proceeding, which is fluid and has many twists and turns, that you would say, do this at the outset, and apparently only at the outset. Let me answer that, and I think it's easiest to answer it in the context of executory contracts and creditors. Executory contracts, they're always going to have potentially some effect. Maybe you just don't know what the effect is going to be, and a lot of people who could be parties of interest, just because it doesn't fit into the… It doesn't make rational economic sense, they don't participate. They just don't participate until… They have a right to, but they don't until it becomes relevant. The Pre-Bankruptcy Code Act labels executory contracts as parties of interest. Why? It's because they had to get advance notice of rejection. There's a case called King v. Barrett of the Tenth Circuit, 1973. It explains that you give them notice in a hearing so they can be heard. Currently, the current code says that the counterparty can seek in order to set a period to assume or reject. That's 365.D.2. Other parties in interest may similarly set that same period, but they can only do so in the context of status conferences. That's 105.D.2.A. All of this is showing that parties in interest… that executory contract counterparties are parties of interest. Now, there's a few things that I'd like to address. One is, there's a question about having a voice and not a vote. I think that goes to the question of being impaired. Impaired is what the plan under Section 1124 proposes. But there are other requirements for a plan. For instance, a plan needs to be feasible. So, if you're a creditor and the plan proposes satisfying everything, but it satisfies it in a way that's not likely to end up being implemented, you can object under 1129A11 that the plan's not feasible. So, the impairment just talks about the separate requirement that the classes vote. It doesn't address your right to be heard, which, by the way, is not only a right to be heard to object, but it's a right to be heard to support the plan. If you're not impaired, you may well want to come in and support the plan. The floodgates question. It largely turns, I think, on the question of any issue, not the problem of party in interest. Take, for instance, the vending contractor that everyone's talking about. The problem is not that a vending contractor gets to come in and be a party in interest and participate with respect to the vending contract, whether it's assumed or rejected or interpreted in a way it doesn't like. The concern is that it's also heard on any issue. But the text of 1109B and its history, the evolution of expanding those groups that can speak on any issue, foreclose any real textual ability to say, oh, you can only participate on certain issues. Any issue means what it says. Secondly, the concerns about floodgates I think are totally overstated. Litigants make rational economic choices where they have a stake in reasonable arguments. The right to be heard doesn't impose on the court any burden to speak at length if it doesn't think there's much to say about the issue. And the court has to decide the question in a way in terms of confirmation because this court and United Student Aid funds determined that the court has to decide whether the plan complies with the code even if no one objects. And finally, sanctions deter any kind of bad faith conduct. Ultimately, this is a balancing question. Does it make sense to bring everybody in? We're going to weigh it against maybe some burden of having their voices heard. We're going to balance it against the waste of resources of trying to decide who gets to be heard. And Congress struck that choice in 1190. Is your position just boiled down to the common sense point that an insurer is on the hook for the claims in a mass tort bankruptcy? I think that's a subset of our point, our primary point. All we need is that subset. Isn't that just kind of common? I just thought that was a common sense point. I agree, but I actually don't think it's that much different than saying that a counterparty to an executory contract is always going to have an interest. I just don't think that that's different. And the idea was that Congress, the legislative history reflects the idea here is to hear all sides of an issue and then let the court decide. And the insurer is kind of obvious, right? That's your point. Sure, it's an obvious one. But it would have included even the vending contractor. Now, the vending contractor might not have participated. Why? Because, you know what, it didn't matter. It's like small steaks, potatoes. The vending contractor is just not going to participate. There's a lot of people in the periphery that just don't participate. The 10-cent creditor, unsecured 10-cent creditor, is expressly a party in interest, right? What about an employee? If we're going with your definition, which has to do with contracts, I suppose an employee has a contract. So are you saying that they would be a party in interest? An employee can be a party in interest as a party to an executory contract. Now, there are certain code provisions that deal with employees and unions and things like that. But as a general matter, yes, that's true. And just in response to Justice Kagan, I guess I didn't understand you to be making a statement that the parties couldn't be recognized on a rolling basis, right? Like if someone determines or decides in the middle of it that they have an interest, they can ask to come in. Yes, but I think that's true. The reality is that they've always had the interest to be potentially affected. They might not have realized that until later. But when they realize it, they come in, and, you know, they're given a right to be heard. Thank you, counsel. Justice Thomas? Justice Sotomayor? In your brief, you say, this case presents no occasion for the court to determine the phrase's outermost party in interest, outermost boundaries. And you repeat that today, that we should just say clearly insureds or people with executory contracts, et cetera. But don't we have to say a little bit more? Don't we have to say something like directly and adversely affected to quantify? To take away the employee who doesn't have a contract with the debtor, but the employee who has a contract with the petitioner truck? Could he sue and say, my salaries and benefits are going to go down because this doesn't have an anti-fraud provision, and the company's going to lose more money, and I'm going to make less? The court might well want to say more. But the court certainly doesn't have to, to resolve the issue with respect to whether truck is a party in interest. Now, if the court were wanting to explore the text of party in interest more, I think what I would suggest is that the court can explain that a party is a participant on one of the sides of an action or affair. It's not a person in interest. It's a party in interest. And context matters here. Bankruptcies are aggregations of individual controversies, and the participants there have an interest in the proceeding's exercise of jurisdiction over the debtor's property in the distribution. If the proceeding has a potential to affect their interests, and it's not necessarily an interest in the entitlement to a specific debtor property, if the proceeding has the potential to affect their interests, that is enough to be a party in interest. Now, things that I think you're talking about, two orders of steps out have never been thought to be people who come in with an interest. I love asking this question. How do I write this so that there is a difference between that employee and the truck company? I can write it to say the truck company because it's affected, but I have to say something more to take care of those two and three counts. The employee and truck. Yeah. Well, certainly the court would have to decide how far it wants to go. I don't think you have to decide employees and truck, so it's a question before the court to decide employees and truck. But if you wanted to, we don't object to the idea that the participants that have an interest in the proceeding have always been those that have a direct kind of not attenuated effect. It's not amici. It's not some law professor. It's not employees of somebody else. It's someone with a more direct effect. I don't think that derives from Article III, but I think you can derive it from kind of looking more generally at the bankruptcy practice. Thank you, counsel. Mr. Marshall? Mr. Chief Justice, and may it please the court, a party in interest is someone who has a legal interest in a debtor's bankruptcy estate. It's property. Not someone who is merely concerned about the debtor's bankruptcy more generally. The list of parties in interest in Section 1109B shows this. Settled usage of the term in bankruptcy confirms it, and the government, at least in its brief, agrees with it. At the outset of the case, the parties in interest will ordinarily be the debtor with its creditors and shareholders, those whom Section 1109B lists. Others, Justice Thomas was asking about, may come to have an interest in the estate and thus can show that the bankruptcy will directly affect their rights or obligations. For example, if a plan would breach an insurer's policy, altering its contract rights or obligations, then it would become a party in interest. But if a plan preserves the insurer's status quo, it is insurance neutral. In that case, the insurer is not a party in interest, and it has no right to object to plan confirmation. Here, the plan does not alter the truck's contract rights or obligations. It breaches nothing. It does not do anything to put truck on the hook. That is what the lower courts uniformly found, and truck here does not challenge that finding. Truck therefore has no right to challenge plan confirmation. Truck invokes policy concerns that would supplant this settled, clear rule with a novel, expansive framework that would give insurers greater rights to challenge plan confirmation than even a creditor has. But bankruptcy law already addresses these concerns by allowing interested entities that are not parties in interest to pursue permissive intervention. Truck simply ignores that tool. I welcome the Court's questions. Mr. Marshall, at the beginning, at the outset of these proceedings, bankruptcy proceedings, truck was a creditor, and truck certainly, from its vantage point, was a party in interest because of being the one insurer for many of the claims here. Do you think we should look at the filing period as a point to determine party of interest, or should we do it at a later point? It would seem that you can't do insurance neutrality at the beginning. I don't know how you would do that. If one is in the list of entities in Section 1109B, it's possible to answer that question at the outset. So they'd be a creditor? They were a creditor, yes. But as to their status as an insurer, the question is, do they have an interest in the debtor's bankruptcy estate? And at the outset of the case, it was obviously a no, but then when a plan is submitted and they want to claim that that would breach their policy rights and give them an interest in the estate, then that would be the point at which the actual question would need to be decided. Let's go back a second. As a creditor at the beginning, if they are considered a party in interest, can they raise any issue in the proceedings? Under 1109B, they generally can. In the context of a plan confirmation, if they're unimpaired, they don't have the right to object. Isn't it just common sense that an insurer at the outset is going to have an interest in this because how much the insurer will have to pay will be affected by how the plan is structured? Justice Kavanaugh, they could be interested in the general sense of being concerned, which is the phrase Trump tended to use. No, not just concerned, but how much they're going to have to pay. It's not just, I'm concerned about things. The question is, at what point do they come to have an interest in the estate? If a plan is proposed that, in their view, would breach their policy, they certainly have the right to be heard on whether it would, in fact, breach their policy rights, and they were heard here. All three lower courts held their policy rights were not breached. And so there's nothing about the bankruptcy case that puts the insurer on the hook. That can happen in cases. It happened in the Ninth Circuit case in the briefs. You're saying put them on the hook, but for how much they're going to be on the hook, that will be affected, right? I'm not sure I followed that. Nothing about the bankruptcy case changes Trump's position. If the bankruptcy case were to change an insurer's position, it would be a party in interest and have a right to object to the plan. They want the fraud prevention provisions. What's your response to that, as their interest in having those established? There's a threshold question whether they are a party in interest or not, and that depends on whether they have an interest in the bankruptcy estate. If they are a party in interest, then they would have the right to come in and raise the issues of concern, including the fraud prevention measures, but it's a threshold question. Perhaps it's helpful to think of an analogy. A creditor, as we were discussing with Justice Thomas, has a right to raise any issue under 1109B, but there's a threshold question whether you actually are a creditor. So you can come in and you can say you're a creditor. You don't actually have to move to intervene. And if somebody challenges that, then the court has to decide, are you a creditor or not? Why are you fighting this so hard? Why do you want Truck to not even be heard? What is your motivation to be fighting this so hard? We have a deal with the creditors. We think it's a valid deal and a good deal. We want to be done with bankruptcy, and Truck is coming in to try to blow up the deal that we have. I am looking at the brief of Amici American Prosperity Casualty Insurance, and on page 15, they explain that once the plan is approved, this plan, under your terms, it obtains a discharge, the debtor, and the protection of a channeling injunction. Now all the claims are going to go through the trust and not to you. The debtor has no ongoing incentive, after the plan is approved, to limit the cost of defending, paying claims, and any liability on those claims. You lose it. That's the benefit bankruptcy gives, given you. And the claimants, their incentive for this plan is that they don't want the anti-fraud provisions. So who's protecting the insured? If the insured can't protect itself because you say it can't go to the bankruptcy court, how is it being heard? Because what you're suggesting to us is that they don't have a right to say the plan is violating a bunch of other provisions of the code, 1129A, or permitting the differential treatment of people who are owed money, or of claimants. I just don't understand your argument. I can argue that the plan is breached, and once they say the plan's not breached, I can't argue that the plan violates the code? I've just never heard of enforcing standing in that way. Justice Sotomayor, if one is not a party in interest, there's no right to raise issues. Party in interest status is a threshold question. And here, as a truck, as an insurer, they need to show they have an interest in the bankruptcy state to get in, to answer the threshold question. I think what everybody's saying to you is, well, they do have an interest in these anti-fraud provisions. Not just a concern, they have an interest, a material interest. If they get the anti-fraud provisions, they're better off. If they don't get the anti-fraud provisions, they're worse off. Now, what I hear you saying back is, they had no pre-existing entitlement to the anti-fraud provisions, and your test is one that says, if they're not being made worse off by the plan, then they're not an interested party. But I don't know why that should be the test. If I look at the language, that's not the test. If I think about what the ordinary meaning of being a party who's interested is, that's not the test. Why is your test, so long as they're not being made worse off, they're not an interested party? Well, the test of whether there is a benefit I would like to get out of the bankruptcy case, which is Truck's test, is unlimited. Any time you could imagine a hypothetical plan that would be better off for you. That's a practical concern, and I think the practical argument against it is, it's pretty costly to enter into these proceedings, and nobody really does it unless they have a serious interest. In any way, bankruptcy courts have docket management techniques. In any way, just putting aside the practical concerns, is this a floodgates problem or is it not a floodgates problem, I don't really see why your test, which is, are you being made worse off, or are you just being held to the bargain that you initially had, I don't see why anybody would think that that's the way to answer a question of whether you're interested in a proceeding. Party and interest is a term of art that means you have an interest in the debtor's bankruptcy estate. That's been the meaning for 100 years, and so that's the way to start. But if we're going to think in terms of seeking to obtain a benefit, in the context of causes of action, Lexmark, zone of interest, the question is always, have you suffered a loss? If you've suffered a loss, you come in and you try to get a remedy. What Truck is saying here is, I can come in, even though I'm suffering no loss at all to my legal rights, and just seek to obtain a benefit because it's very nice that this bankruptcy is here and maybe I can get something out of it. But even if they don't have the right to come in, there's always permissive intervention. So there's the right to come in as an interested entity that's not a party and interest. The benefit of that is it's in the discretion of the bankruptcy court. You have to show cause. The bankruptcy court can decide whether you come in for all issues or just some. The question is, who has the right to intervene in the case? Would you object to permissive intervention in a situation like this, where the insurer is seeking fraud prevention? We would have objected to their attempt to come in and object to the merits of the plan, but they certainly have the right. That wasn't the question. Yes. The question was. They could have sought to pursue permissive intervention under 2018 to get to the merits of the plan. Would you have objected to that? We probably would have opposed that for all the reasons that we're otherwise opposing. You just don't want them to be hurt. They have the right to be hurt. You don't want the fraud prevention provisions, but you don't want them to be hurt on that. Is that, I mean, that's okay. All the lower courts, I mean, they were hurt on that. All the lower courts ruled against them on the merits as well, but the bankruptcy and the district court, other than the Fourth Circuit, didn't get to it. It's good to keep in mind, if we're going to be talking about the policy concerns, that bankruptcy is just not about get everybody to the table. It's also about having an efficient and expeditious proceeding that makes it possible to resolve what is ultimately a question about the debtor and its creditors, or in some cases, its shareholders. Well, it may not be about getting everybody at the table, but you do want all the creditors there, don't you? Yes, you do want all the creditors there. Well, they're a creditor. As to the plan at issue here, they were an unimpaired creditor, and an unimpaired creditor does not have the right to object to a plan. That's Section 1126F. Mr. Marshall, the language, you agreed that they had an interest in the plan finding, right, about the good faith and about whether this was going to be collusive. Everybody said below that they had an interest in the plan finding. The plan finding was a threshold question that they certainly had the right to litigate. Right, and they did have an interest as a creditor because of the deductibles that were due, right? They were a creditor. As to the plan at issue here, they were unimpaired and didn't have the right to object. Okay, but that's looking ahead to the plan. I guess what I want to say is that 1109B says that a party in interest, including our list, may be heard on any issue in a case under this chapter. So if they can be heard on the plan finding or if they're a creditor, I guess I don't understand why on the text of that provision they can be so limited and say, well, you can't bring up anything else, even though the text says any issue. It doesn't limit it in that way. I'll address that in two respects. So the plan finding, again, is the question of whether they are a party in interest in the first place. It's a threshold question. It's like deciding jurisdiction or statutory standing. You have to get through that to get to the merits. So as an insurer, nothing about the plan finding changes whether or not Truck is a party in interest. They're not. As to a creditor, we're talking about the right to object to a particular plan that leaves them unimpaired. And although 1109B has that general language, 1126F more specifically says that an unimpaired creditor is presumptively, is conclusively presumed to be a creditor. Maybe I'm not understanding about the plan finding. I mean, it's true that at the end the court said that Truck wasn't harmed, but, you know, what if the court had decided otherwise? In the beginning, they don't know whether it's going to be collusive or violate Kaiser's duty of good faith. Right? Maybe I'm just misunderstanding. I mean, it went in your favor, but... Party in interest status is a threshold question. You have the right to come in and litigate whether you're a party in interest or not, and that's all the plan finding did. It determined that their rights were not abridged, and therefore they were not a party in interest. If that had gone differently, then, yes, they could have objected to the rest of the plan to the merits. Mr. Marshall, you've agreed that they were a party in interest to the extent they were a creditor, right? Yes. And normally a creditor or a party of interest can be heard on any issue. You agree with that? That's the text of 11.9. And you've been citing 11.24 and 11.26 to us. I understand and appreciate that, but that governs who can vote, right? That is what it explicitly says, yes. It doesn't talk about what they can argue about or be heard on, right? It says they're conclusively presumed to have accepted the plan, and an inference from that is it would be absurd to vote to in favor of the plan. So if you can't vote, you can't be heard. Is that your argument, then? You can't be heard on the merits of the plan, and that's what the circuit courts have said. We cited cases and Truck cited some cases allegedly to the contrary, but they're actually not, because all they do is determine whether the creditor that wants to object to the merits of the plan is actually impaired. Thank you, Counsel. Justice Thomas? Justice Sotomayor? Justice Kagan? Justice Gorsuch? Justice Jackson? Can I just ask one question? At the threshold, you keep saying at the threshold, they have no interest in the estate property. Do you dispute that they have a potential to have an interest in the estate property, that insurers do? Because the plan isn't in existence yet. Do you dispute that they have the potential? Borrowing from intervention law, the question would be when is their interest put at issue, and it's somewhat like what should be, is a plan proposed that would breach your contract and give you an interest in the estate, and it's analogous to what the actual history is with executory contracts. So the statutory history that the government invokes actually says, suggests your party and interest when there's a motion to reject an executory contract. That would create a claim, a breach, and make you a creditor. I guess I don't understand your answer. When is put at issue? When it is put, why isn't it put? If you're an insurer, you're not in the list, nothing makes you part of the list. Right, but the list says including, so we know there are entities that may not be in the list, right? Correct. Okay, so the question is, they come to the table at the beginning and they say, we think we should be in the list because we have a potential through the reorganization plan that will be adopted to be affected. And you say not party and interest because you're not already affected, or it's not clear to us right now that you're affected. Is that your position? If we're talking about truck as insurer? Yes. Yes. But once a plan is proposed, that would breach your contract? So can I ask you, if people who are not potentially affected are not parties and interest, I guess I don't understand Congress' suggestion that parties and interest should be a part of the reorganization. In other words, the context in which they're, what's valuable to them about being a party and interest is the fact that they then get to talk with everybody about how this is going to go. And the problem I'm having with your argument is it suggests that it's only after we know or after they know that they're definitely affected that they get a seat at the table. But the whole point of it is that the parties and interest get to talk about it. So it seems to me it would have to include people who have a clear potential for being affected by the plan that we're all hammering out in this discussion. There's nothing in 1109B itself that says that has to be determined once and for all at the outset. And if we're talking about someone who's not in the list, the only way to know if you're a party and interest is do you have an interest in the bankruptcy estate. Thank you. Thank you, Counsel. Mr. Frederick? Thank you, Mr. Chief Justice, and may it please the Court, there are a number of questions I'd like to address that you posed this morning, but I want to start with one principle, which is that the Bankruptcy Code was not intended to protect insurers except in a couple of places where asbestos-related trusts are created. Those are in Sections 524G principally. But in 109, Congress said an insurer can't invoke bankruptcy for protections under the Code. So, Justice Kavanaugh, to your question about the text and practicalities, Congress answered the question of whether an insurer should be permitted to butt into a debtor's bankruptcy and try to use it to protect its own financial interests. The bankruptcy process is designed to ensure that the debtor can maximize its assets for the benefit of creditors. And so what the insurer, as insurer is doing here, is seeking to co-opt the debtor's bankruptcy for the purpose of protecting its own interests. Justice Thomas, I can start with the timing question, if you like. Well, you can start with that. But also, I think that their interest isn't so much in feathering their own nest, per se, but rather that they be treated with the anti-fraud provisions the same way that the claims under the trust are being treated. Yes, and let me start with, I'm going to call these pre-trial disclosure requirements because Truck had six months of discovery to try to prove any fraud with the Kaiser claimants and came up with crickets. What they are calling anti-fraud prevention measures are really requirements to impose on state courts that before a claimant can file a claim, a claimant has to comply with what Truck wants for information that a state court might or might not require under state court rules of procedure. So if you were to accept the idea that their nomenclature drives the outcome here, you're essentially saying bankruptcy courts have the authority to tell state courts how to do their discovery process. And Justice Barrett, that's why we're fighting this. Because the claimants shouldn't be required to impose on themselves and their families a lot of information that if Truck really wanted it, he could ask for it in state court discovery proceedings and state court judges could decide if that's relevant or burdensome or not. Why do all these other circuits and other bankruptcy courts impose it? If they felt the same way that you're arguing, are they violating the bankruptcy code or disrespecting state courts because that's what they require? No. The requirements here are only for a very small class of claims that are called extraordinary claims. And they are extraordinary claims and it's defined at JA-427 under the plan. These are not insured claims where the claimant is seeking to say that Kaiser was responsible for the vast bulk of its exposure to asbestos. And in that very unusual circumstance, which actually in the implementation of this plan hasn't arisen yet, the requirement is for that claimant to come forward with proof of a negative, that it hadn't been exposed to asbestos by any other potential tortfeasor. And so we're talking about a very narrow class with a description for a very particularized purpose that Truck wants to appropriate and force so that claimants will have less of an opportunity to invoke their jury trial rights in state court, which are protected under the age code. Why should you, as the better trust, have that advantage and not give it to them? Because that's the difference in treatment that they're claiming is contrary to the plan. It's not for this reason. The treatment by Kaiser of Truck is exactly the same before bankruptcy as it was now. Bankruptcy changes everyone. It changes who the debtor is to the trust. By its own terms, it's extinguishing the debtor's obligations to anyone, except under the extant contract, but the incentives are different. There's inherent change. That's why the principle of insurance neutrality, which has developed 30 years ago in the courts of appeals and has actually followed in every single court of appeals that has addressed this question, has looked at whether the insurer's legal obligations are altered, and if they are not... ...impose these same requirements, and they've done it. Are they breaching bankruptcy law? Are they stepping on state courts in an improper way? What are they doing? And why are you fighting something that you admit your claimants in discovery might well have to give up? Because it's up to the state court to decide that. Why? Because they're the ones that will be superintending discovery. But what does that have to do with the cost? What does that have to do with anything? Meaning, you know, if you eventually, in most jurisdictions, will have to give up something like that, because there is very few jurisdictions who would say they have to pay the entire cost if there's multiple exposures, or they have to pay the entire cost if other people have paid you. That's all that's being sought. It's more than that, Justice Sotomayor, which is why they're fighting so hard for it. And I want to make this very clear, that the point of the extraordinary procedure is because the trust itself is having to pay the claims. They are not insured by definition. That's the whole point. You're trying to give yourself something more than you're giving someone else, and you want to reach into their pocket and say, I'll give myself more than you. Because the contract of insurance, which they've litigated for 19 years in California state courts, definitively determined they will have to pay the claimants who are insured. So I think I'm getting the equities of this, Mr. Frederick, as you describe it, is that they had a contract and they've been protected as to that contract, and they're just looking to get a better deal now and to kind of take advantage of the bankruptcy. So I'm getting the equities here. I'm not getting where you derive from the text the idea that they're not parties in interest because they have a material interest in what comes out of the bankruptcy proceeding, and they can improve their position materially in the bankruptcy proceeding. The cases that we saw historically under the Transportation Act of 1920 make very clear that if you're just seeking a benefit, you don't get party and interest status. You have to show aggrievement and harm to your preposition. So those are some 1920s cases. Do you have anything in the text that can suggest that the text has incorporated that view? We don't have anything like that, although I would point to the history that the debtor's brief very helpfully lays out, which explains how the origination of the bankruptcy code went through these iterations and accepted those principles for party and interest. And I think that it makes sense from an Article III perspective too because the other side is essentially saying Article III has no role to play here where a bankruptcy process is a multifaceted fight over a res. What is the debtor's estate? Who gets that property? And so those claims are going to be somewhat flowing in and out, and it is imperative in the 524G context that you recognize Article III has a role to play. Why? Because the district court has to enter the final injunction. The bankruptcy court does not have the authority to do that under the statute. Mr. Frederick, I certainly get your arguments and why they might persuade a bankruptcy court to rule for you and not require these anti-fraud provisions, but I think you've admitted that a court can do those provisions, and they have done them in other cases lawfully, right? For the trust's benefit, but not where there's an insurance neutrality clause. So the question becomes, can they be heard? That's the only question before us. Can they be heard at all? And I guess I'm struggling on that one. We're not discussing the power of the court. We're not discussing what it might rule. We're only discussing who can be heard. And I think you have to acknowledge there are creditors who can be heard, even if it's a virtual certainty that they will get nothing or a virtual certainty they will get 100 cents on the dollar. They still can be heard. They can be heard until the point where their impairment is determined. They may not have a vote, but they can be heard on any issue, no? Until their impairment has been determined, Justice Gorsuch. That's the key point. Where do you get that from? 1126F. That's who votes. But the point of voting is who can hear, and the whole point of the chart, which you can see, the bankruptcy court's determination is who's impaired or not, because the bankruptcy court has to get to an end place. There were a dozen insurers here, and under their position, there is no limiting principle to any of those insurers who could continue to fight because they want to get benefits out of a bankruptcy process that Congress foreclosed. Do you agree on Article III that that's with respect to a plaintiff coming to court and not with respect to those who checked under bond? No, I don't agree with that. You disagree with Bond and Clapper on that? I think Clapper's actually more helpful for our side of justice. What about Bond? Bond, I think that the point is where the effort by the objector in this situation is seeking to get a benefit and must show under Article III that it has injury in fact that is redressable and traceable to the plan. Here, Truck can't satisfy either because its redressability problem is really because they think state courts are not going to be adequate to police fraud, and they are not able to trace their harm as insurer to the plan because of the insurance neutrality provision. And so I think there's a very serious Article III question here that Truck has essentially glided by in this argument this morning, but I want to urge you to take that very seriously because it can't be the the whole point of a bankruptcy proceeding is get to a confirmed plan. And the only way to do that is to weed out the people who have something that they want to say and to have different threshold provisions. So, Justice Thomas, I wanted to get back to your timing question. At the disclosure statement, the debtor has to present a plan that is where the issues of insurance neutrality typically are going to be addressed. And at confirmation, we are knowing then that the creditor is impaired or non-impaired. So those are the two key timing mechanisms. It can't be at the outset of a bankruptcy because there isn't enough known about the nature of the estate. Well, if he's not impaired, doesn't he have an interest in making sure that doesn't change? He does, but that's where the confirmation of the plan comes in. And that's why, if you look at the chart, Mr. Chief Justice, this group is unimpaired, this group is unimpaired because they are paid in full. And truck was paid in full for its premiums. So it is not an executory contract, which under the Fern Countryman definition was where there was lack of performance on both sides of the contract. Here, the debtor performed on the contract. The debtor paid all the premiums. And so it is a non-executory contract, which I think helps give the lie to the government's position that calling something an executory contract is somehow going to solve the problem here. Where you've got performance that is occurring at different levels and at different stages. And that's why the DOJ policy manual itself says be very careful about invoking executory contracts because they are not defined in the bankruptcy code and it's very difficult to know how to administer them in practice. And so for the government to be suggesting that you have a test here that is so malleable where the interest of claimants and creditors is critically important to understanding how to weed out the various muckrakers. And I would point you to the policy holder's brief, pages 12 to 14, which talks about just how long the insurers have an interest. Why delay is profit maximizing. Every day insurers do not have to pay on their claims is a good day for the insurers. And so they have every incentive to tell their lawyers go in and object to everything because that will delay the process. We could have had this plan confirmed five years ago. The only objector was truck. Every other insurance company agreed to the plan. And so by adopting some rule that everybody gets to be heard and everybody gets to participate. Truck on the hook for the majority of claims? Truck and other insurers. But isn't truck responsible for the lion's share? That's what they say, and I have no reason to doubt it. But Justice Barrett, where do you draw the line there? Do you say that an insurer that's responsible for two-thirds gets it? I was just saying that it means less that other insurers didn't object if they didn't have the same stake in the claim. We don't know what the comparative issues are. The excess insurance part is under a confidentiality standard that I have not seen, and I can't tell you in court what that entails. But what I can say, Justice Barrett, is that it can't be a size issue because there's no way to draw a line on a size issue. Where do you say it's a quarter is enough or six insurance companies that each have an equal stake is enough? Can I ask you a timing question? Can you be a party in interest? I'm just trying to understand your point about how things change as the plans develop. Chief, do you want me to answer that? Can you be a party in interest at the beginning and then not be a party in interest as it becomes clear your interest isn't impaired? Is that what you're saying? I'm saying that impairment is treated differently. So you can be a creditor and a party in interest, but you are not allowed then to vote on a plan and thereby exercise your voice through your vote. The code treats that differently, and it's odd to suppose that an unenumerated party like an insurance company is treated better than a creditor. Thank you, Counsel. I just want to follow up. You were just making the point that you can't draw that line. I mean, the law does that all the time, right? I don't care where it is, and it may be the majority or a significant part of it or whatever. And that's why I think looking to the guidance of the courts of appeals is actually humbling at one level but also instructive. For 30 years, courts of appeals have looked at this idea of insurance neutrality to determine whether a plan is materially altering preexisting legal obligations. In those cases where the court has said, yes, it is, insurance companies are allowed to be parties in interest. That's the Thorpe case out of the Ninth Circuit, the Global case out of the Third Circuit. But in those situations where there's an insurance neutrality provision and the insurance company is not able to say with any proof that its legal obligations are materially altered, the courts of appeals have said, you're not a party in interest. Well, wouldn't Truk want to have something to say about the division that you've just cited? And they do, Mr. Chief Justice, because that issue is litigated. When my friend was talking about this being at the threshold, the whole question is, is the insurance company's legal obligations, are they impaired or not? And that fight is a very vigorous fight. But that fight continues beyond what you're calling the threshold. It does and it is. But at a point where the plan is confirmed and we know there will be insurance neutrality and we know that their rights as a creditor are not giving them a right to vote, at that point it should stop. And the four years that we've spent doing appellate litigation here ought not to be necessary. Justice Thomas. Justice O'Meara. Justice Kagan. Can I just ask, because you called them muckrakers, the amicus brief of the professors on the other side, and you can just respond to this, says, indeed when an insurer faces millions of dollars in financial liability, like Petitioner does here, common sense and fundamental bankruptcy policy dictate that it be considered a party in interest in the bankruptcy proceedings. I mean, this is repeating what you've said probably, but that sounds different from muckrakers. Well, what I would say, Justice Kavanaugh, is that a party in interest has extraordinary rights. They have the right to contest the trustee, the appointment, the powers of the trustee. They can object to the lifting of the automatic stay. They can ask for the elimination of the plan. They can ask for the transformation of it from a Chapter 11 to a Chapter 7. And those powers and rights are very powerful, and they take bankruptcy courts an enormous amount of time to thoughtfully and conscientiously work their way through. Justice Barrett. Justice Jackson. Thank you, counsel. Thank you. Ms. Holt, you'll have rebuttal.  Three points, two quick and one a little bit longer. One, just to really underscore, 1126F, that is about voting. That is not about what 1109B is about, which is being heard. Two very different things. Number two on intervention. Congress did away with the requirement that parties in interest must intervene when it replaced 206 and 207 with 1109B. And three, my friends have talked a lot about the insurer in this case trying to get something out of bankruptcy or seek a benefit. Trying to stem the tide of overinflated claims is not seeking a benefit. It's just trying to make sure that the plan complies with the code as bankruptcy judges have an independent duty to insure. And even if you disagree with me on that, it's undisputed that there are a vast bulk of claims in this case that the plan finding adjudicates the truck's insurance rights, that truck is a creditor because the insurance deductible. So it really is a party in interest several times over. And I haven't heard from my friends on the other side any justification for reading any issues out of the text. 1109B gives stakeholders a voice, not a vote and certainly not a veto. We would respectfully ask the Court to reverse and remand. Thank you, Counsel. The case is submitted.